**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SUZANNE GILBERTSON,

     Plaintiff,

v.

STANLEY B. JONES, Ed.D., and
KING & QUEEN COUNTY SCHOOL BOARD

     Defendants.

Civil Action No. 3:16cv255

## MEMORANDUM OPINION

This matter is before the Court on Defendants' MOTION TO DISMISS (Docket No. 4). For the reasons stated below, Defendants' MOTION TO DISMISS (Docket No. 4) will be granted in part and denied in part. The motion will be granted as it pertains to Count One, and denied as it pertains to Count Three.

## BACKGROUND

Plaintiff Suzanne Gilbertson ("Gilbertson") was employed as the Food Services Coordinator for King & Queen County Public Schools ("the School System"). (Compl., Docket No. 1, ¶ 1). In January 2015, Gilbertson learned that she had cancer and took time off for surgery. (Compl. ¶¶ 7-17). The School System denied Gilbertson's request for an extension of leave under the Family & Medical Leave Act ("FMLA"), allegedly over failure to return certain forms. (Compl. ¶¶ 12-16). On March 23, 2015, Gilbertson

filed a grievance against her supervisor, superintendent Stanley B. Jones ("Jones"), over the denial of FMLA leave and over the reorganization of her department which occurred in her absence. (Compl. ¶¶ 3, 16-17).

On April 15, 2015, Jones and the School System decided to eliminate Gilbertson's position. (Compl. ¶ 18). According to Gilbertson, "[t]he alleged basis for the decision was budgetary concerns, but the truth is that Dr. Jones and the School System were intentionally retaliating against Gilbertson for her FMLA-related grievance." (Compl. ¶ 18). Gilbertson further alleges that "on May 1, 2015, Dr. Jones and the School System suspended Gilbertson with pay ... The stated reason for the 'suspension' was performance, but this reason was false .... In truth, the suspension was in retaliation for Gilbertson's FMLA-related grievance." (Compl. ¶ 19). The Complaint states that

> [s]oon after that, Jones defamed Gilbertson, both in TV and in print. First, on May 7, 2015, as part of a news story on WTVR titled "Would you eat this? Charred food served at area high school" which discussed food quality problems at the School System, Dr. Jones told the TV station that Gilbertson had been placed on suspension and then stated, although he could not go into details, "if an employee is suspended, generally, it's going to be related to performance." In other words, he told the TV station that Gilbertson had performance problems and that her performance problems were the reason for the food service problems that the station was reporting on.

2

(Compl. ¶ 20) (emphasis added). Jones is alleged to have repeated similar statements to a local newspaper. (Compl. ¶ 21).

Gilbertson's employment with the School System ended on June 30, 2015. (Compl. ¶ 23). Gilbertson filed this Complaint on April 29, 2016. The Complaint alleges three counts. Count One (against Jones and the School System) alleges "Due Process Violation: Liberty Interest" on the basis of Jones's press statements. (Compl. ¶ 25-31). Count Two (against the School System) alleges "Wrongful Termination and Interference Claims under the Family & Medical Leave Act." (Compl. ¶ 32-39). Count Three (against Jones) alleges "Defamation" on the basis of Jones's statements in the press. (Compl. ¶ 40-45).

On June 23, 2016, Jones and the School System (collectively "Defendants") filed a Motion to Dismiss Counts One and Three. (Docket No. 4).

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir.2006). Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." McCleary-

3

Evans v. Maryland Dep't of Transp., State Highway Admin., 780
F.3d 582, 585 (4th Cir.2015) (citing Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007)).

When deciding a motion to dismiss under Rule 12(b)(6), a
court "draw[s] all reasonable inferences in favor of the
plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,
591 F.3d 250, 253 (4th Cir. 2009). However, while the court must
"will accept the pleader's description of what happened" and
"any conclusions that can be reasonably drawn therefrom," the
court "need not accept conclusory allegations encompassing the
legal effects of the pleaded facts," **Charles A. Wright & Arthur
R. Miller, Federal Practice and Procedure** § 1357 (3d ed.1998);
Chamblee v. Old Dominion Sec. Co., L.L.C., No. 3:13CV820, 2014
WL 1415095, *4 (E.D. Va. 2014). Nor is the court required to
accept as true a legal conclusion unsupported by factual
allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).
"Twombly and Iqbal also made clear that the analytical approach
for evaluating Rule 12(b)(6) motions to dismiss requires courts
to reject conclusory allegations that amount to mere formulaic
recitation of the elements of a claim and to conduct a context-
specific analysis to determine whether the well-pleaded factual
allegations plausibly suggest an entitlement to relief." **Wright
& Miller,** supra; Chamblee, supra.

4

**APPLICATION**

**A. Plaintiff Fails to State the Allegations of Serious Character Defect as Required to Sustain the Due Process Claim Alleged in Count One**

The liberty interests protected by the Due Process Clause go beyond physical security: these liberty interests are also implicated "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971); Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 722 (E.D. Va. 2015). Accordingly, federal law recognizes a cause of action where: (1) a state actor's statements stigmatize a plaintiff by alleging that plaintiff suffers from a serious character defect; (2) such statements are accompanied a negative change in plaintiff's employment status; (3) the statements were published; and (4) the statements were false. Greene v. Scott, 637 F. App'x 749, 751 (4th Cir. 2016) (unpublished) (relying on Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 308 (4th Cir. 2006)).

At this stage, Defendants do not contest that Jones's statements accompanied Gilbertson's firing, that the statements were public, or that the statements were false. Therefore, the sufficiency of Count One turns on the first requirement: whether Jones's statements alleged a serious character defect.

The line of cases recognizing a Due Process stigma claim arise out of Constantineau, 400 U.S. at 433, and Paul v. Davis, 424 U.S. 693 (1976). In Constantineau, the Supreme Court held that a Due Process liberty interest was implicated where a police chief posted a notice in liquor stores that sales of liquor were forbidden to plaintiff, pursuant to a statute permitting posting of such notices when excessive drinkers exhibited certain traits. Constantineau, 400 U.S. at 434-439. In Paul, the Supreme Court held that no liberty interest was implicated where police chiefs included a photograph of plaintiff identifying him as an active shoplifter, noting that "reputation alone," without harm to a tangible interest such as employment, was insufficient to implicate a Due Process liberty interest. Paul, 424 U.S. at 701. The origins of the Due Process stigma claim inform the level of seriousness required for allegedly defamatory statements by state actors to be actionable under the Due Process Clause of the Fifth and Fourteenth Amendments. Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982) (stating, in employment Due Process stigma case, that "[i]t is noteworthy that the Court's dictum in Paul v. Davis ... was made in the context of allegations of criminality.").

Recognizing that not all disparagement by a state actor is constitutionally actionable, courts employ the "serious character defect" threshold. To be actionable, a state actor's

6

allegations must "imply the existence of serious character defects such as dishonesty or immorality" so that the statements "might seriously damage [plaintiff's] standing and associations in his community" or foreclose "his freedom to take advantage of other employment opportunities." Zepp v. Rehrmann, 70 F.3d 381, 387-88 (4th Cir. 1996) (relying on Board of Regents v. Roth, 408 U.S. 564, 573 (1972)); see also Sciolino v. City of Newport News, Va., 480 F.3d 642, 647 (4th Cir. 2007) (quoting Robertson, 679 F.2d at 1092). Allegations of fraud or dishonesty rise to the level of qualifying "serious character defects." E.g., Sciolino, 480 F.3d at 647; Boston v. Webb, 783 F.2d 1163, 1165-66 (4th Cir. 1986) (allegation that employee received bribe sufficient to state liberty claim); McNeill v. Butz, 480 F.2d 314, 319-320 (4th Cir. 1973) (allegation connecting employee with financial irregularities sufficient to state liberty claim).[1]

---

[1] The Fourth Circuit's approach is largely consistent with its sister circuits. See Sciolino, 480 F.3d at 647; Head v. Chicago Sch. Reform Bd. of Trustees, 225 F.3d 794, 801 (7th Cir. 2000); O'Neill v. City of Auburn, 23 F.3d 685, 691-93 (2d Cir. 1994); Staton v. Mayes, 552 F.2d 908, 915-16 (10th Cir. 1977).
    Some circuit courts augment the "serious character defect" language with requirements that the state actor allege "moral turpitude" or create a "moral stigma." Greer v. Detroit Pub. Sch., 507 F. App'x 567, 573-74 (6th Cir. 2012); Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991); Roley v. Pierce Cty. Fire Prot. Dist. No. 4, 869 F.2d 491, 495-96 (9th Cir. 1989). Even this language is not greatly inconsistent with the Fourth Circuit approach, given the significant overlap between "serious character defects" and "moral turpitude."

Yet allegations of incompetence, standing alone, do not imply serious character defects, and are not actionable under the Due Process Clause. Sciolino, 480 F.3d at 647 (relying on Ridpath, 447 F.3d at 308-09); see also Greene, 637 F. App'x at 751 (statements regarding inadequate work product did not support claim); Zepp, 79 F.3d at 388 (statements regarding "management problems" did not support claim); Robertson, 679 F.2d at 1092 (statements regarding incompetence did not support claim); Merritt v. Mullen, 49 F. Supp. 2d 846, 848-49 (E.D. Va. 1999) (statements regarding "mismanagement" did not support claim); Zarrelli v. City of Norfolk, No. 2:13CV447, 2014 WL 2860295, at *6 (E.D. Va. Jun. 23, 2014) (statements regarding violations of office policy did not support claim).[2] The rule that incompetence alone does not support a liberty claim follows naturally from the rule's origins in Constantineau and Paul, which considered allegations more serious and more indelible than simple incompetence in a particular position.

---

[2]  Other non-actionable statements include allegations of: difficulty getting along with others, inability to deal with co-workers, undermining of social agencies, incompetence, hostility toward authority and aggressive behavior, being a poor teacher, non-specific allegations of malfeasance, and absenteeism. Greer, 507 F. App'x at 574 (collecting Sixth Circuit cases); Roley, 869 F.2d at 495-96 (collecting Ninth Circuit cases).

Actionable statements include charges of untruthfulness and mental illness. Greer, 507 F. App'x at 574 (collecting Sixth Circuit cases); Head, 225 F.3d at 801 (collecting Seventh Circuit cases). In older cases, allegations of Communism were actionable. E.g., Adams v. Walker, 492 F.2d 1003, 1008-09 (7th Cir. 1974) (collecting older Seventh Circuit cases).

Gilbertson attempts to escape the rule that allegations of incompetence are insufficient to support a Due Process liberty claim by citing Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 308 (4th Cir. 2006). (Pl.'s Am. Mem. in Opp. to Def.'s Mtn. to Dismiss, Docket No. 13, 4) ("Pl.'s Opp."). Ridpath was employed as defendant Governors Marshall University's "Compliance Director," a role in which he was responsible for compliance with National Collegiate Athletic Association ("NCAA") rules. Ridpath, 447 F.3d at 300-01. During Ridpath's tenure as Compliance Director, the NCAA became aware of serious improprieties at the university, including academic fraud. Id. Ridpath became a "convenient scapegoat," and was reassigned within the university. Id. at 301. University officials informed the NCAA that Ridpath's reassignment was a "corrective action" taken to remedy the university's NCAA rules violations, and the "corrective action" label was included in the NCAA's official report on the matter. Id. at 301-302. Ridpath sued, alleging that the "corrective action" label "call[ed] into question his honesty, integrity and professional competence as an NCAA Compliance Coordinator" and destroyed his future career opportunities. Id. at 302. The university, in a motion to dismiss, argued that the "corrective action" label "did not implicate a protected liberty interest because it cannot be understood to constitute a charge of a serious character

9

defect," and that the label "indicated nothing more than that [Ridpath] was incompetent." Id. at 308-09. Ridpath argued, and the Fourth Circuit agreed, that, "within the intercollegiate athletics community in particular, the use of the 'corrective action' label in this context is typically understood to connote dishonesty and other serious character defects on the part of the label's bearer," raising a question of fact inappropriate for resolution in a motion to dismiss. Id. at 309 ("we agree [that] use of the 'corrective action' label lays blame on him for the NCAA rules violations – including academic fraud ... and thus insinuates 'the existence of serious character defects such as dishonesty or immorality.'") (emphasis added).

As the Fourth Circuit made clear in Ridpath, Zepp, and Sciolino, context is significant in determining whether a state actor's statement connotes serious character defects, because context helps to determine whether a statement "might seriously damage [plaintiff's] standing and associations in his community" or foreclose "his freedom to take advantage of other employment opportunities." Zepp, 70 F.3d at 387-88; Sciolino, 480 F.3d at 647. For example, accusing a police officer of "neglect of duty" may implicate a Due Process liberty interest in the context of other allegations. Ratliff v. City of Milwaukee, 795 F.2d 612, 626 (7th Cir. 1986) ("Ratliff was also charged with untruthfulness, failure to obey orders, neglect of duty, and

10

insubordination. Such charges … indicate that she is unfit to serve as a law enforcement officer in any capacity [and] might also seriously damage her standing and associations in the community."). Yet accusing the chairman of a state liquor control commission of "neglect of duty," in the absence of other sufficiently aggravating accusations, does not implicate a Due Process liberty interest. Adams v. Walker, 492 F.2d 1003, 1008–09 (7th Cir. 1974). In Ridpath, the Fourth Circuit noted two context-specific facts which exacerbated the "corrective action" label and allowed Ridpath's claims to survive a motion to dismiss: (1) the "corrective action" label effectively associated Ridpath with fraud, which is clearly linked to the serious character defect of dishonesty; and (2) the label was used within the "intercollegiate athletics community in particular," where community members understood such label to connote dishonesty. Ridpath, 447 F.3d at 309. If the university had merely alleged incompetence by an employee whose employment was unrelated to ethical compliance, the allegation would be non-actionable, as in Zepp, 79 F.3d at 388, and Robertson, 679 F.3d at 1091-92. But where the allegations of incompetence implicated Ridpath's involvement in academic fraud, and thus implied that Ridpath suffered the serious character defect of dishonesty, the university's allegations were actionable. Ridpath, 477 F.3d at 309.

Unlike Ridpath, Gilbertson's appeal to context is unavailing. Gilbertson claims that "Jones's public comments raised a serious attack on the character of Gilbertson – not only in her capacity as the Food Service director but also as a steward of the school healthiness." (Pl.'s Opp. 5). There are two substantial problems with this argument.

First, lack of healthiness does not imply any serious character defect in the way that alleging a connection to academic fraud implies the serious character defect of dishonesty. Gilbertson has not cited, nor has the Court found, authority that would support such a notion.

Second, the "steward of school healthiness" language seems to suggest that Gilbertson believes that her position as a public servant, or perhaps as someone who works for a school system, carries a sort of moral responsibility, and that any allegation which impugns her competence in that position of public trust necessarily also impugns her character. This simply cannot be squared with case law. Courts have required pleading more-than-mere-incompetence for employees in a number of positions which implicate the moral responsibilities of public trust: school principals, Head v. Chicago Sch. Reform Bd. of Trustees, 225 F.3d 794 (7th Cir. 2000); teachers, Segal v. City of New York, 459 F.3d 207, 217 (2d Cir. 2006); Skiff v. Colchester Bd. of Educ., 514 F. Supp. 2d 284 (D. Conn. 2007),

12

aff'd sub nom. Skiff v. Colchester Sch. Dist., 316 F. App'x 83 (2d Cir. 2009); school security guards, Greer v. Detroit Pub. Sch., 507 F. App'x 567 (6th Cir. 2012); police officers, Ratliff v. City of Milwaukee, 795 F.2d 612 (7th Cir. 1986); fire chiefs, Roley v. Pierce Cty. Fire Prot. Dist. No. 4, 869 F.2d 491 (9th Cir. 1989); and public defenders, Portman v. Cty. of Santa Clara, 995 F.2d 898 (9th Cir. 1993). All of these positions carry at least as much moral responsibility, if not more moral responsibility, than the position of Food Services Coordinator. Nevertheless, the courts assessing those liberty claims did not permit the plaintiffs to proceed based on the theory that allegations of incompetence in public service insinuated a serious character defect. Here, too, the Court cannot reasonably infer that Jones's assertions that Gilbertson performed poorly as a steward of school healthiness somehow insinuate the existence of a serious character defect.[3]

---

[3] To find otherwise would create an exception that swallows the serious-character-defect rule.

Many, if not most, people who file employment-related stigma-based liberty claims are public employees, and have a corresponding moral responsibility to fulfil the public's trust that they will perform competently. When they are fired for incompetence, there is necessarily an implication that they were unable to fulfil that particular form of public trust. If allegations of incompetence in any public position were sufficient to state a liberty claim on the basis that such allegations imply a moral failing to fulfil the public's trust in competent service, then all public employees could file on the mere basis of allegations of incompetence. As case law shows, this is clearly not the case. More importantly, it should

13

The Court cannot presently conceive a government job in which incompetence, standing alone, inherently implies a moral failing or serious character defect. Even public employees who shoulder a tremendous amount of moral responsibility must specifically plead, as Ridpath did, that allegations of incompetence somehow demonstrate a moral failing beyond mere incompetence as a public servant which renders them indelibly temperamentally unfit for their profession. Because Jones's statement that Gilbertson's performance problems were responsible for poor food quality did not imply any serious character defect, Count One will be dismissed. Moreover, because nothing in the record suggests that Gilbertson will be able to remedy the lack of allegation of moral failing, this dismissal will be with prejudice.

## B.   Gilbertson Properly States a Claim for Defamation at Count Three

In Count Three, Gilbertson pleads defamation based on Jones's statement that "[i]f an employee is suspended, generally, it's going to be related to performance." (Compl. ¶ 20). To state a claim for defamation, plaintiff must plead: "(1) publication; (2) of a statement that is actionable; and (3)

---

not be the case: the government does need to be able to fire public servants who are incompetent.

requisite intent." Andrews v. Virginia Union Univ., No. 3:07CV447, 2008 WL 2096964, at *10 (E.D. Va. May 16, 2008) (relying on Jordan v. Kollman, 269 Va. 569, 612 S.E.2d 203, 206 (2005)).

At this stage, Defendants do not contest publication or requisite intent. (Def.'s Mem. in Supp. of Mtn. to Dismiss, Docket No. 5, 6-12) ("Def.'s Mem."). Defendants focus, instead, on actionability.  To be actionable, a statement must be false and defamatory. Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). Whether a statement is actionable is a matter of law. Id.

> At common law defamatory words which are actionable per se are: (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade.

Carwile v. Richmond Newspapers, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954). Additionally,

> it is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other

15

> people would understand them, and according
> to the sense in which they appear to have
> been used. In order to render words
> defamatory and actionable it is not
> necessary that the defamatory charge be in
> direct terms but it may be made indirectly,
> and it matters not how artful or disguised
> the modes in which the meaning is concealed
> if it is in fact defamatory. Accordingly, a
> defamatory charge may be made by inference,
> implication or insinuation.

Carwile, 82 S.E.2d at 591-92.

### 1. Jones's Statements Identified Gilbertson as an

### Under-Performing Person with Reasonable Specificity

First, Defendants argue that Jones's statements were insufficiently specific to defame Gilbertson. (Def.'s Reply in Supp. of Def.'s Mtn. to Dismiss, Docket No. 15, 2).

> The exact words are "there is a problem and
> [Dr. Jones] confirmed the head of food
> services for the entire school system was
> suspended a couple of weeks ago, but
> declined to comment further citing personnel
> matters." ... Second, "If an employee is
> suspended, generally, it's going to be
> related to performance."

(Def.'s Reply 1-2). Defendants argue that "the only statement about Plaintiff is that she was suspended, no reason for the suspension was given .... The second statement about general suspensions cannot be read to fairly be about the Plaintiff, especially given the immediately preceding sentence that he is not commenting on her." (Def.'s Reply 2). However, Defendants acknowledge that the context of the statements was as follows:

16

(1) Jones commented that the Food Services Coordinator had been suspended; (2) the reporter "followed up by asking about suspensions generally," and (3) Jones stated that suspensions are generally related to performance. (Def.'s Reply 1-2).

Defendants' argument flies in the face of a plain reading of Jones's comments in context. Allegedly defamatory statements are given their "plain and popular" construction. E.g., Carwile, 82 S.E.2d at 591-92; Hatfill v. New York Times Co., 416 F.3d 320, 330-31 (4th Cir. 2005); Andrews, 2007 WL 4143080 at *8 (holding that whether a statement is one of fact or opinion is determined by a reasonable construction) (relying on Richmond Newspapers, Inc. v. Lipscomb, 234 Va. 277, 362 S.E.2d 32, 43 n. 8 (1987)).

> Evaluation of a defamation claim requires the court to consider the plain language of the words spoken and the context and general tenor of the message. In order to determine whether an alleged statement is defamatory, the court must "assess how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message."

Cutaia v. Radius Eng'g Int'l, Inc., No. 5:11CV00077, 2012 WL 525471, at *4 (W.D. Va. Feb. 16, 2012) (quoting Snyder v. Phelps, 580 F.3d 206, 219 (4th Cir. 2009)); see also Carwile, 82 S.E.2d at 592 (noting that the defamatory aspect of a statement may be made by "inference, implication, or insinuation").

17

Defendants themselves note that "allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." (Def.'s Reply 2) (quoting Schaecher v. Bouffault, 772 S.E.2d 589, 595 (Va. 2015)).

Here, making a reasonable inference in favor of Gilbertson, a reasonable person would read Jones's (1) statement that Gilbertson was suspended, followed by a statement that (2) suspensions are "generally … related to performance" as meaning that (3) Gilbertson was suspended for reasons related to performance. A reasonable person would not understand Jones's statement that he could not comment on personnel matters as meaning that his following statement that suspensions are generally related to performance did not pertain to Gilbertson. In the context of this interview for a story about the quality of school food, and after a remark that Gilbertson was suspended, the Court can reasonably infer that an ordinary and reasonable person would understand Jones as stating that Gilberton's performance caused her suspension.

## 2. Jones's Statements are Not Statements of Opinion

Second, Defendants argue that Jones's statements are non-actionable statements of opinion, rather than actionable statements of fact which may be proven true or false. (Def.'s

Mem. 7, 9-11); see also Katti v. Moore, No. 3:06CV471, 2006 WL 3424253, at *4 (E.D. Va. Nov. 22, 2006) ("statements [of opinion] may be actionable if they have a provably false connotation and are thus capable of being proven true or false.").

Allegations that a person has performed below a professional standard are actionable, because expert testimony may be employed to determine whether the plaintiff met the relevant professional standard. Cashion, 286 Va. at 337, 749 S.E.2d 526; see also, e.g., Carwile, 196 Va. at 8, 82 S.E.2d 588. Drawing reasonable inferences in favor of Gilbertson, an objective and reasonable reader would understand Jones's statement as stating that Gilbertson was suspended for performance reasons, and thus that her performance fell below the expected standard in her profession. Contrary to Defendants' position, Jones's statements may be proven true or false by testimony about professional standards, and a reasonable person would not understand them as statements of opinion.

### 3. Defamation Per Se

Defendants argue that Jones's statements are not defamatory per se. (Def.'s Mem. 7).[4]

---

[4] It is unclear why Defendants divided their initial brief into "defamation per se" and "common law defamation." (Def.'s Mem. 7-12). Defamation per se is a common law principle.

Virginia law recognizes certain statements as defamatory per se, including statements which impugn plaintiff's fitness for her trade, occupation, or profession which prejudice plaintiff in pursuit thereof. Great Coastal Express v. Ellington, 230 Va. 142, 334 S.E.2d 846, 849 (1985); Carwile, 82 S.E.2d at 591; Hatfill, 416 F.3d 320, 330 (4th Cir. 2005).

> For such prejudice to arise, the statements must relate to "the skills or character required to carry out the particular occupation of the plaintiff." Fleming v. Moore, 221 Va. 884, 275 S.E.2d 632, 636 (1981). Thus, a corporation may be defamed per se by statements "which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business." General Products Co., Inc. v. Meredith Corp., 526 F.Supp. 546, 549-50 (E.D. Va. 1981).

Swengler v. ITT Corp. Electro-Optical Products Div., 993 F.2d 1063, 1070-71 (4th Cir. 1993). In assessing whether a statement is capable of having defamatory meaning for the purposes of defamation per se is a question of law, and the Court must

_____

Defamation per se is distinguished from non-per se defamation because "if a plaintiff establishes a claim for defamation per se, Virginia law presumes that the plaintiff suffered actual damage to its reputation and, therefore, does not have to present proof of such damages," and because punitive damages may be awarded upon a finding of defamation per se "even though actual damages are neither found nor shown." Swengler v. ITT Corp. Electro-Optical Products Div., 993 F.2d 1063, 1071 (4th Cir. 1993). Because Gilbertson has pled harm (Compl. ¶¶ 25, 44) and Defendant has not argued that her harms are somehow insufficiently pled, the distinction between defamation per se and non-per se defamation is irrelevant at this stage. Regardless, Gilbertson has stated a claim for defamation per se.

construe the words used in context and in their popular sense to determine whether an allegedly defamatory statement impugns or prejudices. See, e.g., Hatfill, 416 F.3d at 330-31.

A reasonable person would understand Jones's statements (1) in an interview about the poor quality of school food, (2) after mentioning that Food Services Coordinator Gilbertson had been suspended, and (3) mentioning that suspensions were generally related to performance, as (4) suggesting that Gilbertson lacked the skills required to carry out her occupation. Swengler, 993 F.2d at 1070-71. Contrary to Defendants' characterizations (Def.'s Mem. 8), Jones's statements, as reasonably understood in context, directly touch upon Gilbertson's fitness for her trade, occupation, or profession. Accordingly, Gilbertson has pled a statement that is defamatory per se.

### 4. Well-Pled Allegations of Falsity

Finally, as to falsity, Defendants argue that "nothing alleged" indicates that Jones's statement ("If an employee is suspended, generally, it's going to be related to performance") is false. (Def.'s Reply, 2). That is incorrect. Gilbertson clearly pleads that her performance was satisfactory (Compl. ¶ 17); that she was actually suspended as retaliation for filing an FMLA claim; and that it is accordingly false for Jones to state that she was suspended based on her performance. (Compl. ¶¶ 18, 42). The allegation of falsity might have been pled more

21

artfully, but the Complaint is clear enough that the Court can reasonably infer that Gilbertson is pleading the falsity of Jones's statement.

At the motion to dismiss stage, a court must accept as false any statements that the Complaint alleges to be false. Chapin, 993 F.2d at 1092. Because Gilbertson has pled that she did not suffer from performance issues and that any statements imply she did suffer from performance issues are false, the Court must accept that Jones's inference that Gilbertson suffered from performance issues as false at this stage.

**CONCLUSION**

For the reasons stated above, Defendants' MOTION TO DISMISS (Docket No. 4) will be granted in part and denied in part. The motion will be granted as it pertains to Count One, which is dismissed with prejudice, and denied as it pertains to Count Three.

It is so ORDERED.

/s/                    REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 17, 2016

22
