IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SUZANNE GILBERTSON,
Plaintiff,

v.

STANLEY B. JONES, *et al.*,
Defendants.

Civil No. 3:16cv255 (REP)

REPORT AND RECOMMENDATION

This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Third Party's Motion to Limit or Quash Subpoena *Duces Tecum* ("Motion") (ECF No. 24). For the reasons set forth herein, the Court recommends that the Motion be GRANTED in part and DENIED in part. The Motion should be DENIED as it pertains to the notes regarding the interview between Dr. Stanley B. Jones and Melissa Hipolit related to the news story at issue. The Motion should be GRANTED as to all other materials sought in the subpoena *duces tecum*.

## I. BACKGROUND

This lawsuit arises out of Plaintiff's employment with Defendants. Plaintiff Suzanne Gilbertson ("Gilbertson") served as the Food Services Coordinator for King & Queen County Public Schools ("the School System"). (Compl. (ECF No. 1) at ¶ 1.) Defendant Dr. Stanley B. Jones ("Jones") served as the superintendent of the School System. (Compl. at ¶ 3.)

On April 15, 2015, Jones and the School System decided to eliminate Gilbertson's position. (Compl. at ¶ 18.) On May 1, 2015, they suspended Gilbertson with pay, citing her

performance as the reason. (Compl. at ¶ 19.) Gilbertson, however, alleges that the School System suspended her in retaliation for her filing an FMLA grievance. (Compl. at ¶ 19.) This retaliation gives rise to Count Two of Plaintiff's Complaint. (Compl. at ¶ 32-39.)

On May 7, 2015, CBS 6, WTVR-TV ("the Station"), ran a story (the "news story") titled: "Would you eat this? Charred food served at area high school." The news story discussed food quality problems at the School System. (Compl. at ¶ 20.) In that report, Jones confirmed to Melissa Hipolit ("the Reporter") that the School System had placed Gilbertson on suspension, but declined to comment more specifically. (Compl. at ¶ 20.) The news story then quoted Jones as saying, "if an employee is suspended, generally, it's going to be related to performance." (Compl. at ¶ 20.) Jones allegedly made similar statements to a local newspaper. (Compl. at ¶ 21.) Gilbertson alleges that Jones defamed her with these statements. (Compl. at ¶ 40-45.) These statements, according to Gilbertson, implied that Gilbertson had performance problems, and those problems led to both the substandard food service and her suspension. (Compl. at ¶ 21.)

On June 30, 2015, Gilbertson's employment with the School System ended. (Compl. at ¶ 23.) On April 29, 2016, Gilbertson filed this lawsuit. Count One (against Jones and the School System) alleges "Due Process Violation: Liberty Interest" on the basis of Jones's press statements. (Compl. at ¶ 25-31.) Count Two (against the School System) alleges "Wrongful Termination and Interference Claims under the Family & Medical Leave Act." (Compl. at ¶ 32-39.) Count Three (against Jones) alleges "Defamation" on the basis of Jones's statements to the press. (Compl. at ¶ 40-45.) The District Court subsequently entered an order (ECF No. 23) that granted Defendants' Motion to Dismiss with respect to Count One, but denied the Motion to Dismiss with respect to Count Three.

On August 11, 2016, Jones served a subpoena *duces tecum* on the Reporter seeking:

1) Any and all notes, recordings, writings, emails, text messages or written communications between Suzanne Gilbertson and the Reporter related to the news story;

2) Any and all notes, recordings, writings, emails, text messages or written communication between Dr. Stanley B. Jones and the Reporter related to the news story;

3) Any written communication with any agent or employee of CBS 6 regarding the news story;

4) Any and all drafts of any news report, including the attached Exhibit A, regarding Suzanne Gilbertson, Dr. Stanley B. Jones, or food services in King & Queen County.

(Motion at Ex. 1 ("Subpoena").)

On August 25, 2016, the Reporter, through counsel, moved to quash the subpoena *duces tecum* on the grounds that she has no information pertinent to the merits of the case, and a reporter's First Amendment privilege protects any information that she has. (Mem. in Supp. of Mot. to Limit or Quash Subpoena *Duces Tecum* ("Rep.'s Mem.") (ECF No. 25) at 2-8.) Defendants respond that the Reporter has information pertinent to the litigation, and the First Amendment does not protect that information. (Defs.' Opp'n to Mot. to Quash ("Defs.' Mem.") (ECF No. 26) at 2.)

On September 21, 2016, at the request of the Reporter, the Court conducted oral argument on the matter. During argument, the Reporter's counsel explained that only the Reporter's notes encompassed any information concerning the interview with Jones.[1] These notes amount to roughly one-third of a page. The Reporter's counsel argued that for the notes to have any relevance, Jones would need to articulate a context for his statement that differs from

[1] Counsel for the Reporter explained that a recording of the entire interview no longer exists. According to standard industry practice, the news station digitally records interviews and other materials. Then, after editing, the news station retains only the portions of the recordings that they use in the broadcast. Due to storage limitations, they record over all unused portions of an interview. As such, they have recorded over the context of Dr. Jones's statements at issue here.

the one evident in the news story. Counsel for Jones responded that Jones recalls making the quoted statement in the context of a more general conversation about the policies of the School System. Counsel for Jones also explained that he sought the notes from the interview with Gilbertson, because Gilbertson's contact with the Reporter generated the interview with Jones. The Court agrees with Jones that he should have access to the notes of his interview with the Reporter, but agrees with the Reporter with respect to all other material sought.

## II. STANDARD OF REVIEW

Trial courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003). In controlling discovery, courts must ensure the proportionality of discovery requests. Federal Rule of Civil Procedure 26(b)(2)(C) cautions that "all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012). Rule 26(g)(1)(B)(iii) requires an attorney requesting discovery to certify the proportionality of the request with respect to the "needs of the case, prior discovery, the amount in controversy, and the importance of the issues at stake." Furthermore, the Court must limit discovery, either *sua sponte* or on a motion, when it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Within the bounds of proportionality, Rule 26(b)(1) grants broad discovery of all relevant information unprotected by privilege. Rule 45(d) further provides that a court must quash a subpoena when it "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

The First Amendment affords certain protections to news gatherers based on our country's commitment to a free and uninhibited press. *Stickels v. General Rental Co.,*750 F. Supp. 729, 731 (E.D. Va. 1990). As such, courts need to police the official harassment of the press. *Branzburg v. Hayes*, 408 U.S. 665, 707 (1972) ("[N]ews gathering is not without its First Amendment protections."). Additionally, news reporters enjoy "some constitutional protection of the confidentiality of [their] sources." *Pell v. Procunier*, 417 U.S. 817, 834 (1974). However, the Supreme Court has refused to grant reporters a blanket privilege. *Branzburg*, 408 U.S. at 689; *see also United States v. Sterling*, 724 F.3d 482, 505 (4th Cir. 2013) (declining to create a reporter's privilege in a criminal case).

The First Amendment clearly does not provide the press with an absolute shield from legal process. *See Herbert v. Lando*, 441 U.S. 153, 165 (1979) (applying evidentiary rules to the press and other defendants similarly); *Branzburg*, 408 U.S. at 684 (denying the press any special immunity from giving grand jury testimony). Instead, in civil proceedings, the First Amendment affords a journalist a qualified privilege. *Stickels*, 750 F. Supp. at 731; *see Sterling*, 724 F.3d at 505 (contrasting the lack of a reporter's privilege in criminal cases with the qualified privilege enjoyed by reporters in civil cases). This privilege requires a court to balance the reporter's interest with society's interests. *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287 (4th Cir. 2000); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986).

The Fourth Circuit has adopted a three-part test to aid district courts in this balancing test: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." *LaRouche*, 780 F.2d at 1139. A reporter holds a heightened interest in maintaining the confidences of her sources, but even revealing non-confidential materials burdens the press. *Stickels*, 750 F. Supp.

at 732 (citing *United States v. Steelhammer*, 561 F.2d 539, 540 (4th Cir. 1977) (en banc)). Despite this burden, courts consider the reporter's interest diminished in the absence of both confidentiality and vexation. *United States v. King*, 194 F.R.D. 569, 582, 585 (E.D. Va. 2000).

## III. DISCUSSION

The Reporter asserts that the First Amendment protects her from disclosing all four types of materials sought in the subpoena *duces tecum*. (Rep.'s Mem. at 6.) Before analyzing each of the types of evidence sought under the *LaRouche* balancing test, the Court must examine the elements of the underlying defamation claim. This examination will especially inform the relevancy prong of the balancing test.

**Defamation**

Plaintiff claims that Jones defamed her with the statement that "if an employee is suspended, generally, it's going to be related to performance." (Compl. at ¶ 20.) Defendant argues that the statement's lack of specificity precludes a finding of defamation. (Defs.' Reply in Supp. of Defs.' Mot. to Dismiss (ECF No. 15) at 2.)

A defamation claim in Virginia requires (1) publication (2) of an actionable statement (3) with the requisite intent. *Jafari v. Old Dominion Transit Mgmt. Co.*, 462 Fed. Appx. 385, 390 (4th Cir. 2012); *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005). Publication occurs with the communication of the statement to a third party. *Echtenkamp v. Loudon Cnty. Pub. Schs.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003). To qualify as actionable, a statement must be both false and defamatory. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Defamatory words include those "which impute to a person unfitness to perform the duties of an office or employment of profit, or those which prejudice such person in his or her

profession or trade." *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954).

Here, Plaintiff has set forth a claim that satisfies the requirements listed above for a defamation claim. (Compl. at ¶ 20.) In ruling on the motion to dismiss, Judge Payne found that the reader could infer that Jones told the reporter that Gilbertson faced a suspension due to performance issues. (Mem. Op. on Mot. to Dismiss ("Opinion") (ECF No. 22) at 16-18.) Judge Payne based this finding on the context of Jones's quote. (Opinion at 17.) Specifically, Jones confirmed that Gilbertson faced a suspension, then followed that with the general quote about suspensions. (Opinion at 18.) Therefore, the context led to a reasonable inference that Jones had commented on Gilbertson's performance. (Opinion at 18.)

The parties dispute the role that context plays in this defamation suit. The Reporter argues that only the statement in the article matters. (Rep.'s Mem. at 25.) Jones responds that the Court must look at the statement in the context in which he uttered it. (Defs.' Mem. at 5-6.) Defendant's argument finds support from both caselaw and logic.

Courts must consider a defamatory statement according to the context in which the speaker gave it. The potentially defamatory statement must "be considered in light of the plain and ordinary meaning of the words used in context as the community would naturally understand them." *Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir. 1999). Virginia courts have consistently considered the statement within its context at the time of publication. *See Schaecher v. Bouffault*, 290 Va. 83, 93-95, 772 S.E.2d 589, 594-95 (2015) (considering context of published statements in e-mail); *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 297, 362 S.E.2d 32, 43 (1987) (agreeing that appropriate context for published statements was entire article); *see*

*also Echtenkamp*, 263 F. Supp. 2d at 1064 n.15 (acknowledging Virginia's context requirement in defamation cases).

In this case, the Court will consider Jones's statement in the context in which he spoke it to the Reporter. As noted above, the Court looks at the context *at the time of publication*. *Schaecher*, 290 Va. at 93-95, 772 S.E.2d at 594-95. Perhaps the Reporter relies on her everyday use of the term "publication" in the media realm, *i.e.* publication occurred when the news station disseminated the story to the public. But, that definition does not apply here. Instead, in the legal realm, publication occurs when the speaker communicates the statement to a third party. *Echtenkamp*, 263 F. Supp. 2d at 1061. Thus, publication occurred when Jones spoke to the Reporter.

The Reporter inappropriately relies on *Richmond Newspapers, Inc. v. Lipscomb* for the proposition that the news story alone should provide the context for Jones's statement. (Rep.'s Mem. at 4.) *Lipscomb* involved a defamation claim against a publisher and reporter for statements in a newspaper article. 234 Va. at 281-82, 362 S.E.2d at 33. To determine whether the reporter's statements constituted defamation, the court considered them in the context of the entire article. *Id.* at 297, 362 S.E.2d at 43. There, the article itself formed the basis of the claim. *Id.* at 277, 362 S.E.2d at 33. The plaintiff sued the reporter and newspaper, not someone who had spoken to the reporter. *Id.* Since the only publication occurred when the newspaper distributed the story, the court used the story for context. *Id.* at 297, 362 S.E.2d at 43.

Here, however, Gilbertson has not sued the Reporter for statements that she made in the story. Rather, she has sued Jones for a statement that he made to the Reporter. Therefore, the Court must examine that statement in the context of all of the statements that he made to the Reporter.

Indeed, to find otherwise would fly in the face of logic. It would put an interviewee at the mercy of his interviewer. The law cannot hold an interviewee liable for the context in which his interviewer places his statements. The law can only hold an interviewee liable for the context in which he places his own statements. Otherwise, general statements, not defamatory when given, could give rise to a defamation suit depending on how someone else frames them.

Against the backdrop of the defamation suit, the Court will now balance the interests for each type of material that Jones seeks from the Reporter.

**1. Notes/communications between Jones and the Reporter**

Jones seeks any and all notes, recordings, and communications between himself and the Reporter. (Subpoena at 4.) The Reporter claims that these have no relevance to the merits of the case, and also that they enjoy a First Amendment protection. (Rep.'s Mem. at 1.) In conducting the *LaRouche* balancing test, the Court finds that the interest in disclosure outweighs the Reporter's interest.

The first prong — relevancy — weighs heavily in favor of disclosure. As discussed above, Gilbertson has sued Jones for statements that he made to the Reporter. The Court must examine those statements in the context of everything that Jones said to the Reporter. Therefore, Jones must know the full context of his statements. Not only could the materials regarding communications between Jones and Gilbertson bear relevancy to the claim, they could form the crux of his defense.

The second prong also weighs in favor of disclosure. Jones cannot obtain the materials from any alternative source. Only the Reporter has access to her notes or recordings. Although Jones's memory could provide an alternative source for the material, his testimony will surely face reliability and credibility attacks at trial.

As for the compelling interest, the Court finds that it also weighs in favor of disclosure. Gilbertson relies on what Jones told the Reporter for her lawsuit. Jones, for his part, relies on that interview for his defense. Indeed, Count III turns on that interview. The Reporter might possess information that sheds light on the interview. Thus, the Court finds a compelling interest in the information, because it could play an important role in the outcome. *See Frederico v. Lincoln Military Hous., LLC*, 2014 WL 3962823, at *6 (E.D. Va. Aug. 13, 2014) (finding a compelling interest in disclosure, because it "could play a role in the outcome to these proceedings").

The Reporter has only a diminished interest in the information. She does not need to protect Jones as a confidential source. (Defs.' Mem. at 7.) Furthermore, this subpoena does not harass the reporter or enlist her as an investigative arm of the litigant. Rather, the subpoena seeks the full story beyond the piece that the news station ran. In other words, the subpoena also seeks to capture the "outtakes" of the interview, which were destroyed by the reporter after the story ran. Without any evidence of confidentiality or vexation, the Court finds that the interest in disclosure outweighs the Reporter's interest. *King*, 194 F.R.D. at 585.

In fact, the Reporter's argument could have the opposite effect and stem the flow of information to the press. The First Amendment protects a news gatherer's confidential sources, because that protection contributes to the free flow of newsworthy information. *Ashcraft*, 218 F.3d at 287. However, under the Reporter's argument, a source could face liability for the manner in which the reporter spins his words. Then, the reporter's privilege would deny that source the materials needed to defend himself. Sources might then hesitate to speak with the press.

Because Jones's interest in the information outweighs the Reporter's interest, the Court recommends that the motion to quash be denied with respect to the Reporter's notes resulting from her interview with Jones.

**2. Notes, recordings, and communications between Gilbertson and the Reporter**

Jones also seeks the materials relating to the Reporter's interview with Gilbertson. (Subpoena at 4.) The Reporter again argues that these materials have no relevance to the merits, and also that they enjoy protection by the First Amendment. (Rep.'s Mem. at 1.) During the hearing, Jones's counsel argued that these materials have relevance, because Gilbertson's contact with the Reporter generated the interview with Jones. Unlike above, the Court finds that the balance weighs in favor of the Reporter.

First, the relevancy prong weighs in favor of the Reporter. These materials cannot shed any light on the context of Jones's potentially defamatory statements. The fact that Gilbertson's contact initiated the interview with Jones bears minimal, if any, relevance on what Jones told the Reporter. Although the materials may help determine the statements' veracity, they can only provide minimal insight into that issue. An actionable statement must be false as well as defamatory. *Chapin*, 993 F.2d at 1092. At trial, Jones may try to prove the truth of his statements, *i.e.*, that they suspended Gilbertson for performance issues. However, that proof must stem from evidence of the internal decision-making process of Jones and the School Board. Gilbertson's statements to the Reporter can contain nothing more than conjecture regarding the decision-making process.

The second prong also weighs in favor the Reporter. Defendants can obtain any information that Gilbertson may have by deposing her. Jones's counsel indicated during the hearing that he has not yet deposed Gilbertson, because he wanted the information sought in the

subpoena first. However, he will need to obtain that information during the deposition, not before it. Likewise, the third prong weighs in favor of the Reporter. Jones cannot articulate a compelling interest in the information, because he does not need the information for his defense.

With minimal relevance and an alternative source for obtaining the information, Jones's interest in the information does not outweigh the Reporter's First Amendment interest. Therefore, the Court recommends against compelling disclosure of the Reporter's notes and communications with Gilbertson.

**3. Communications with agents or employees of the news station**

Jones also seeks the Reporter's written communications with other employees of the news station. (Subpoena at 4.) The Reporter raises the same defenses as above. (Rep.'s Mem. at 1.) Jones argued during the hearing that these communications could include references to the interview. This time, again, the balance of interests tilts in favor of the Reporter.

First, these internal communications will not likely disclose anything of relevance to the issues. They cannot provide context for Jones's statements to the Reporter. The communications will not show any relevant information not already found in the notes. Nor can they speak to the truthfulness of Jones's statements.

As for the second prong, Jones cannot obtain these internal communications through any other alternative means. To the extent that he limits this request to the communications referencing Jones's interview, he can obtain that information from the notes. Third, he cannot articulate any compelling interest in the disclosure. Quashing the subpoena with respect to these materials would not deprive him of any defense to his case. Seeking the internal communications of a newsroom in search of some smoking gun reeks of a fishing expedition rather than a compelling interest.

Additionally, the Reporter has a heightened interest in these communications. Although the materials do not concern a confidential source, the employees presumably communicated with some expectation of confidentiality. The request reaches beyond the parties to this litigation, who have opened themselves to discovery. Furthermore, disclosing the inner workings of a newsroom places an undue burden on the press. Therefore, the Court recommends against the discovery of any communications between the Reporter and other employees of the news station.

**4. Drafts of the story**

Finally, Jones seeks any and all drafts of any news report regarding the parties to this litigation. (Subpoena at 4.) The Reporter raises the same defenses in moving to quash. (Rep.'s Mem. at 1.) As with the internal communications, the balance here tips in favor of the Reporter.

First, the drafts of the report cannot provide any relevant information not already discovered by the parties. The drafts will show the process between the notes and the final copy. It will not reveal any information not included in Jones's interview materials. And, as a result of the Court's earlier recommendation, the parties would have access to these materials. The second factor also weighs against disclosure, because an alternative means exists. As discussed above, Jones will obtain the information through other materials. Likewise, Jones cannot articulate any compelling interest in the material warranting disclosure.

Jones cannot show an interest in the material that would outweigh any interest that the Reporter has in her own drafts. Therefore, the Court recommends against compelling the Reporter to disclose the drafts of her news story.

## IV. CONCLUSION

For the reasons set forth herein, the Court recommends that the Third Party's Motion to Quash (ECF No. 24) be GRANTED in part and DENIED in part. The Court recommends that the Third Party's Motion be DENIED with respect to the Reporter's notes from her interview with Jones. The Court recommends that the Third Party's Motion be GRANTED with respect to the request for all other materials from the Reporter.

Let the Clerk file this Report and Recommendation electronically, forward a copy to Senior United States District Judge Robert E. Payne and notify all counsel of record.

It is so ORDERED.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

____/s/____________________
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 22, 2016